IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| MICHELLE MEEKS,<br><br>Plaintiff,<br><br>vs.<br><br>NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC. d/b/a DASUQUIN; JACK VAUGHN d/b/a WINNING IMAGES, INC.; IPROMOTEU.COM, INC.; and JOHN DOES 1-10,<br><br>Defendants. | CV 19–88–M–DLC<br><br><br>ORDER |

Before the Court is Defendant Jack Vaughn's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20) and Motion to Set Aside Default (Doc. 34). On August 15, 2019, the Clerk of Court entered default against Vaughn for failing to answer Meeks' Complaint (Doc. 1-1). (Doc. 11.) After receiving the notice of default, Vaughn hired local counsel who then filed a motion to dismiss for lack of personal jurisdiction,[1] represented Vaughn in the Court's Rule 26(f) conference,

---

[1] Though Vaughn argues that the Court could rule on his motion for lack of personal jurisdiction while in default, Vaughn cites no authority that directly supports his contention. (*See* Doc. 21 at 2 (citing *Concrete Log Sys., Inc. v. Better Than Logs, Inc.*, No. CV 18-34-M-DWM, 2019 WL 3017660, at *2 (D. Mont. July 10, 2019) (which noted only that in the context of entering default judgment, a court must independently consider whether it has jurisdiction over the case and parties) and *Golden Ring Int'l, Inc. v. Cullen*, No. 6:18-CV-1244, 2019 WL 4015638, at *1 (N.D.N.Y. Aug. 26, 2019) (where the court considered the issue of personal jurisdiction in regards to the defendant's motions to set aside default and motion to dismiss)). Because default is governed by Rule 55 which originates in the common law decree *pro confesso* which, when

1

and then moved to set aside his default. For the reasons explained, the Court will grant the motion to set aside default and deny the motion to dismiss.

## Background

In the spring of 2017, Plaintiff Michelle Meeks was an employee of the Missoula Veterinary Clinic. Through her work, Meeks won a solar charger as a promotional prize. For the next year, Meeks used her solar charger to charge her cell phone without incident and often left it on the dashboard of her 2007 Chevrolet Avalanche.

On June 8, 2018, Meeks was at work when she noticed a flash in the parking lot. Upon second glance, Meeks noticed that her car was ablaze. Meeks immediately grabbed two nearby fire extinguishers. By the time she got outside, the flames had engulfed the front half of her vehicle. With the fire extinguisher, Meeks successfully put out the blaze but allegedly sustained personal injuries from smoke inhalation, stress, and vexation. When the Missoula Fire Department arrived on scene, its investigation determined that the probable cause of the fire was the solar charger.

---

entered against a party, barred that party "from alleging anything in opposition to the decree or from questioning its correctness on appeal," § 2681 History and Policy of Default Judgments, 10A Fed. Prac. & Proc. Civ. § 2681 (4th ed.), the Court concludes it must begin by addressing the motion to set aside default.

The solar charger ended up in Meeks' possession when four of these chargers were given to her employer, the Missoula Veterinary Clinic by Nutramax, a company that sells animal health products. Nutramax purchased these chargers from Defendant Jack Vaughn. Vaughn shipped the chargers directly to the vet clinic. Meeks now brings claims for strict products liability, negligence, breach of warranty, and punitive damages against Nutramax, Vaughn, and Vaughn's affiliate, IPU.

## Discussion

### I. Entry of Default

Federal Rule of Civil Procedure 55(c) provides: "The court may set aside an entry of default for good cause." The party seeking relief bears a relatively light burden to show good cause, as "[j]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1089 (9th Cir. 2010) (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). To determine whether good cause exists, a court considers: "(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *Id.* at 1091.

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Id.* at 1092. Vaughn argues that his conduct was not culpable because he did not intentionally fail to answer the Complaint. Unfamiliar with litigation, Vaughn was under the misconception that contacting Meeks' counsel to dispute his involvement was a sufficient response to the summons. Vaughn insists that he "did not ignore the matter, but sent a letter to Ms. Meeks's attorneys explaining that he was in sales and had nothing to do with manufacturing the product." Vaughn claims this letter was sent on or about June 24, 2019. (Doc. 35 at 5–6.)

Meeks' counsel insists that they never received this letter and that metadata on the copy of the letter submitted with Vaughn's motion to set aside default (Doc. 36-1) demonstrates that it was not created until August 19, 2019 (Doc. 39-3). In response, Vaughn explains that the metadata postdates the letter's origin because the copy he submitted was a reproduction of the original letter which was destroyed when his computer crashed. (Doc. 43 at 4–5.)

On one hand, Vaughn swears that he contacted Meeks' counsel on or about June 24, 2019 and provides a plausible explanation for the metadata issue. (Doc. 45 at 2.) On the other hand, Marty Ohs, a paralegal and office manager at Meeks' counsel's firm swears that she never received this letter and that she is the person at her firm that collects the mail each day. (Doc. 39-1 at 2.) Taking both parties at

4

their word, the letter was sent but never received. Based on these facts, the Court is not able to draw any inference that Vaughn engaged in culpable conduct.

Next, "[a] defendant seeking to vacate a default . . . must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Id.* at 1094. Vaughn generally argues that, if permitted to participate in the litigation, he will assert defenses such as unreasonable misuse or open and obvious danger, he will argue that the product adequately warned consumers of its danger, and he will assert that Meeks' damage claims are engorged. (Doc. 35 at 6–9.) These general denials do not support Vaughn's obligation to put forth "specific facts" that support a meritorious defense. Nevertheless, pertinent to Meeks' claim for punitive damages, Vaughn argues that he did not have any prior knowledge that the chargers had a history of causing fires. (*Id.* at 9.) By alleging this sole "specific fact," Vaughn has met his minimal burden to show that he has a meritorious defense.

Finally, the Court must consider whether setting aside the default will result in prejudice to Meeks. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, the standard is whether [plaintiff's] ability to pursue his claim will be hindered." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001) (internal quotation marks

5

omitted). Meeks claims that Vaughn's participation will prejudice her case because Vaughn has already indicated his willingness to misrepresent the truth. The Court has already determined that Vaughn's conduct was not culpable. Vaughn's intention in submitting a reproduction of a previously-destroyed letter without calling attention to this fact, while misguided, was not a willful attempt to mislead the Court. Meeks will not be prejudiced because Vaughn, like all litigants, will adhere to the procedural safeguards that protect the truth-seeking purpose of litigation.

Nor will Vaughn's participation result in any delay to Meeks. Despite Vaughn's initial misstep in failing to answer the Complaint, Vaughn has now hired an attorney to represent his interests. Vaughn was represented at the Court's Rule 26(f) conference and indicated no objection to the Court's scheduling order. Despite Vaughn's optimism that he would be released from this case, a matter the Court will address below, Vaughn has months still to participate in discovery and prepare for trial. Finding no prejudice to Meeks, the Court will set aside the default.

## II. Motion to Dismiss

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). The plaintiff's pleading and affidavits "need only make a prima facie showing of jurisdictional facts." *Id.*

For a federal court to exercise personal jurisdiction over a nonresident defendant, two requirements must be met: jurisdiction must be proper under the state's long-arm statute, and jurisdiction must satisfy the constitutional standard. *Schwarzenegger*, 374 F.3d at 800.

### A. Montana's long-arm statute

Montana's long-arm statute provides for jurisdiction over "all persons found within the state of Montana," and any person who (personally or through an agent) commits certain enumerated acts in Montana. Mont. R. Civ. P. 4(b)(1). Montana courts construe what it means to be "found" in the state as synonymous with general personal jurisdiction, whereas each of the enumerated acts listed in subsections (A) through (G)[2] give rise to specific personal jurisdiction. *Tackett v. Duncan*, 334 P.3d 920, 925 (Mont. 2014).

---

[2] The full text provides:

> [A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;

7

Vaughn argues that he is not "found" within Montana and did not transact any business within Montana. (Doc. 21 at 7–9.) This may well be so, but because Vaughn was a supplier within the chain of commerce of a product that harmed a consumer giving rise to a tort that accrued in Montana, he is properly subject to specific personal jurisdiction pursuant to Montana's long-arm statute.

Under Montana law, a tort "accrues" in the place of the injury-causing event. *Bi–Lo Foods, Inc. v. Alpine Bank, Clifton*, 955 P.2d 154, 157–58 (Mont. 1998); *Ascencio v. Phillips Agency, Inc.*, No. CV 16-64-M-DLC, 2016 WL 9461796, at *4 (D. Mont. Aug. 16, 2016). In the context of a products liability claim, "the injury causing event occurs (and the tort 'accrues') when the product injures the consumer." *Rodoni v. Royal Outdoor Products, Inc.*, No. CV 19-17–M–DLC, 2019 WL 2300400, at *1–2 (D. Mont. May 30, 2019).

Here, the tort accrued in Montana because the solar charger caught fire in Montana. Catching fire is the injury causing event. Because this occurred in

---

(D) contracting to insure any person, property, or risk located within Montana at the time of contracting;
(E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;
(F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or
(G) acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1).

Montana, Vaughn is subject to personal jurisdiction under Montana's long-arm statute.

### B. Federal constitutional standard

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted)). In the context of specific jurisdiction, the "minimum contacts" requirement is satisfied when the following criteria are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Where the plaintiff meets her burden to show that the first two elements are satisfied, the burden shifts to the defendant to show that a court's exercise of jurisdiction would be unreasonable. *Id.*

9

In so-called stream-of-commerce cases, a plaintiff cannot satisfy the purposeful availment prong by merely showing that a defendant manufacturer "placed its product into the stream of commerce." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.*

Here, Meeks has met her burden to demonstrate that Vaughn purposely directed his activities to Montana. Unlike many stream-of-commerce cases where a manufacturing or distribution entity does not know precisely where or how many of its products will end up in a certain locale, this is not the case here. Meeks alleges that Vaughn personally packaged and shipped four chargers to the Missoula Veterinary Clinic where she worked. Vaughn purposely directed his activities to Montana because he sent a discrete number of his products directly into the hands of a Montana consumer. Additionally, because the claim arises directly out of this activity, Meeks has met her burden to show that jurisdiction is proper under the first two elements and the burden shifts to Vaughn to show that the Court's exercise of jurisdiction would not be reasonable.

> To determine what is reasonable, courts weigh the following seven factors: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

> defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).

Vaughn argues that exercising jurisdiction would be unreasonable because (1) his contact with the state of Montana was "limited to the shipping of solar chargers there"; (2) because he runs a small business out of his home in Franklin, Tennessee, such that defending a suit across the country is burdensome; (3) that Montana has no particular interest in the litigation; and (4) and that Meeks has the alternative of pursuing the matter in Tennessee. (Doc. 21 at 14.)

Vaughn is correct that the extent of his injection into Montana—sending four chargers—is relatively insignificant. And while it may be more convenient for him to litigate in Tennessee, Vaughn has not shown that he is burdened by having to hire Montana counsel. While Meeks may be able to sue in Tennessee, Vaughn also has not shown that any of the other defendants could be subject to personal jurisdiction there, and it is certainly more efficient for Meeks to bring a single suit against all defendants in a single forum than seeking piecemeal resolution of her claims. Nor has Vaughn demonstrated that any of the remaining factors weigh in his favor: he has not indicated any conflict between sovereigns, and contrary to his assertion, Montana courts always have an interest in providing their residents with a convenient forum for redress. Weighing the factors, the

11

Court is unable to conclude that asking Vaughn to litigate in Montana is constitutionally "unreasonable." The Court will exercise its jurisdiction over Vaughn.

IT IS ORDERED that Vaughn's Motion to Set Aside Default (Doc. 34) is GRANTED.

IT IS FURTHER ORDERED that Vaughn's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 20) is DENIED.

DATED this 12th day of December, 2019.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court